IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA B. R., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Case No. 20-cv-00678-SH |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Joshua B. R. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.   Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such

2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

Plaintiff filed for Title II disability benefits on July 25, 2018, and protectively filed for Title XVI benefits the same day. (R. 20, 268-69, 271-77). In his applications, Plaintiff alleged he has been unable to work since March 10, 2018,[2] due to conditions including blindness or "low vision," chest pains, dizziness, extreme fatigue, migraines, shortness of breath, blood clots in his lungs, hernia, blood pressure issues, and sleep apnea. (R. 268, 271, 322.) Plaintiff was 37 years old at the time of the ALJ's decision. (R. 33, 268.) Plaintiff has a high school education, specialized job training, and past relevant work as a diesel mechanic. (R. 49, 60, 75, 323.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 130-36, 141-54.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on November 8, 2019, and May 27, 2020. (R. 40-54, 56-79, 155-56.) The ALJ then issued a decision denying benefits and finding Plaintiff not

---

[2] Plaintiff later amended his alleged onset date to July 27, 2018. (R. 77-78, 299.)

disabled. (R. 20-33.) The Appeals Council denied review on October 29, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed this appeal on December 29, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2023. (R. 23.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the amended onset date of July 27, 2018. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) chronic respiratory disorder, (2) lung blood clots, (3) migraines, (4) obstructive sleep apnea, (5) major depressive disorder, (6) anxiety, and (7) obesity. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 23-25.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with the following limitations:

> [C]laimant can sit for 6 hours in an 8-hour workday; walk and/or stand a combined total of 6 hours in an 8-hour workday; and lift, carry, push or pull 10 pounds frequently, 20 pounds occasionally. He can occasionally climb stairs or ramps; frequently stoop, kneel, crouch, and crawl; and never climb ladders, ropes or scaffolding. He should not be exposed to unprotected heights or dangerous machinery. The claimant can perform reasoning level 3 and below. He can apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. The claimant can deal with problems involving several concrete variables in or from standardized situations. He can have occasional contact with coworkers and supervisors; and cursory and superficial contact with the general public. The claimant can have no more than a normal level of exposure to gases, fumes, noxious odors, pulmonary irritants, dusts, or extreme heat or humidity such as commercial dryers and humidifiers, where normal is the level found in an office or commercial setting.

(R. 26.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 26-31.) At step four, the ALJ found Plaintiff unable to perform his past relevant work as a diesel mechanic. (R. 31.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as photocopy machine operator, laundry classifier, and garment sorter. (R. 32.) Accordingly, the ALJ concluded Plaintiff was not disabled. (*Id.*)

IV. **Issues**

Plaintiff raises two allegations of error in his challenge to the denial of benefits: (1) the ALJ erred by failing to include all the test results of Dr. Larry Vaught's consultative examination ("CE") in his RFC evaluation (ECF No. 14 at 5-6); and (2) the ALJ failed to adequately apply the precepts of Social Security Ruling ("SSR") 19-4p, 2019 WL 4169635 (Aug. 26, 2019), to Plaintiff's migraine headaches (*id.* at 6-10). Because the undersigned disagrees, and because the ALJ's findings were based on the correct legal standards and substantial evidence, the decision is affirmed.

V. **Analysis**

A. **ALJ's Consideration of Dr. Larry Vaught's Opinion**

First, Plaintiff argues the ALJ committed reversable error when he "failed to include all of Dr. Larry Vaught's findings in the" RFC. (*Id.* at 5.)

On January 2, 2020, Plaintiff presented to Dr. Vaught for a neuropsychological evaluation. (R. 670.) This examination was ordered by the ALJ after neurological questions remained about the medical conditions Plaintiff testified to during his first

hearing.3  (R. 77.)  Dr. Vaught conducted a number of tests during his examination that measured, among other things, Plaintiff's

- sensation;
- perception;
- general intelligence (including his verbal comprehension, perceptual reasoning, working memory, and processing speed);
- attention/concentration and memory function;
- language and communication skills;
- learning, abstraction, and problem solving;
- visual, spatial, and constructional skills;
- motor function; and
- personality function.

(R. 671-74.)  Based on this testing, Dr. Vaught determined Plaintiff was mildly limited in his ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions (R. 677), and markedly limited in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions (*id.*). Dr. Vaught also opined that Plaintiff was moderately limited in his ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to unusual work situations and changes in a routine work environment.4  (R. 678.)

Without summarizing the result of every single test Dr. Vaught relied on for these findings, the ALJ discussed Dr. Vaught's examination and conclusions.  (R. 29.)  The ALJ found Dr. Vaught's opinions persuasive, specifically his opinions regarding Plaintiff's

---

3 While Plaintiff argues the ALJ erred by failing to include test results related to the use of his hands (ECF No. 14 at 6), he did not testify to having any issues with his right or left hand (*see generally* R. 40-54, 58-78).

4 Dr. Vaught separately concluded that Plaintiff "presented with markedly flattened affect" in the area of social function, acknowledged "depression and anxiety," noted a "loss of motivation, diminished frustration tolerance and irritability," a loss of motivation in daily activities, and exhibited "difficulty with items sensitive to attention/concentration issues . . . ."  (R. 675.)

moderate-to-marked limitations in his ability to carry out complex instructions, interact socially, and respond appropriately to unusual work situations. (R. 30.) Importantly, the ALJ did not state he found the results of the tests performed by Dr. Vaught persuasive, but rather (as he was required to do under the regulations), that he found the <u>opinions</u> espoused by Dr. Vaught persuasive. (*Id.*)

Yet, Plaintiff takes issue with the ALJ's failure to include two of these test results in his analysis and final RFC. (ECF No. 14 at 5-6.) Plaintiff notes that he scored below average on his left side on a "Finger Oscillation" test, which measures motor speed and control. (*Id.* at 6 (citing R. 674).) Plaintiff also highlights that, on a "Hand Dynamometer" test measuring grip strength, he obtained a "severe impairment" on his left side and a "moderate to severe impairment" on his right. (*Id.*) Plaintiff maintains the ALJ erred by "never mention[ing] these findings in his decision" or "apply[ing] all of the limitations found by Dr. Vaught . . . to formulate the Claimant's limitations." (*Id.*)

The Commissioner, meanwhile, argues the ALJ correctly considered Dr. Vaught's opinions under 20 C.F.R. §§ 404.1520c and 416.920c. (ECF No. 19 at 8-10.) Regarding Plaintiff's contention that the ALJ was under an obligation to include hand-related limitations in the RFC, the Commissioner counters that the ALJ adequately referred to the testing from which these results were drawn and that Dr. Vaught—a psychologist— did not even include limitations based on these test results in his own conclusions or findings. (*Id.* at 10.) The Court agrees.

A medical opinion "is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) . . . ." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). When considering an individual's claim of disability, the ALJ evaluates the persuasiveness of all medical opinions by considering several factors. *Id.* §§ 404.1520c(c), 416.920c(c).

7

Importantly, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Considering the above, the ALJ did not err regarding the hand-related test results found in Dr. Vaught's CE. First, the notation that Plaintiff "obtained a below average performance on the left side" of the Finger Oscillation test is not an opinion the ALJ was required to discuss under 20 C.F.R. §§ 404.1520c and 416.920c. Documentation of Plaintiff's performance on a test is not inherently a statement about what Plaintiff can still do despite his impairments. *See Id.* §§ 404.1513(a)(2), 416.913(a)(2). Other than the short note stating that the test measures motor speed and control, there was no information in the record regarding how a below average result in a Finger Oscillation test may or may not <u>functionally</u> limit Plaintiff, or otherwise affect his ability to do basic work activities. Plaintiff highlights no evidence—even considering his testimony—that could have supported such a limitation. The Finger Oscillation test result was simply not an opinion the ALJ was required to discuss.

Similarly, the ALJ did not have a duty to discuss the results of the Hand Dynamometer test. In Dr. Vaught's examination record, he noted Plaintiff had a "severe impairment" and a "moderate to severe" impairment in his grip strength. (R. 674.) Per 20 C.F.R. §§ 404.1520b(c) and 416.920b(c), "[s]tatements about whether or not [a claimant] ha[s] a severe impairment(s)" are inherently neither valuable nor persuasive, and the ALJ has no duty to provide "any analysis" about how he considered such evidence. *Id.* And, again, Dr. Vaught offered no opinion as to any functional limitations that might result from such a strength-deficit. (R. 675-79.) Consequently, the ALJ's failure to discuss these specific test results was not in error.

Moreover, even if these were opinions the ALJ should have considered—which they were not—his analysis and final RFC adequately accounted for any potential physical impairments evidenced by the tests. For example, the ALJ cited numerous objective medical evaluations that failed to show any limitation in the use of Plaintiff's hands. (*See, e.g.*, R. 28-31.[5]) Additionally, the RFC adequately accounted for Plaintiff's physical limitations by restricting him to light work and pushing/pulling of no more than 10 pounds frequently and 20 pounds occasionally. (R. 26.) Though Plaintiff argues the RFC should have included a specific limitation for his left hand, he fails to explain in what ways the RFC, as articulated, was insufficient to account for whatever impairment the test result may have indicated. Thus, having thoroughly considered Dr. Vaught's opinions as a part of his RFC evaluation and because the ALJ did not ignore opinions or evidence that he was under an obligation to review, the undersigned finds no error in the ALJ's decision.[6]

### B.   Intensity, Persistence, and Limiting Effects of Plaintiff's Headaches

Second, Plaintiff contends the ALJ erred in his evaluation of Plaintiff's migraine headaches. (ECF No. 14 at 6-10.) Particularly, Plaintiff argues the ALJ "failed to apply the mandates of Social Security Ruling 19-4p" and erred by not including "any limitations

---

[5] Citing records wherein Plaintiff presented for examination with no muscle or joint pain, no limitation in musculoskeletal motion, no muscle weakness or loss of sensation, and no demonstrable hand impairments. (R. 28-29 (citing R. 665, 688, 692-93).)

[6] Were Plaintiff successful in arguing that the ALJ erred by failing to mention these particular test results, the Court would find the error harmless. It did not alter the evidence before the ALJ—as he considered the examination and its findings—and it does not undermine the Court's confidence in the decision. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The Court finds no other reasonable administrative factfinder would have resolved the matter another way.

of the migraine headaches in the residual functional capacity finding." (*Id.* at 6, 9.) The Commissioner, however, maintains that Plaintiff is simply making "a thinly veiled attempt to beckon the Court to re-weigh the evidence in a way that favors him" and that the ALJ "addressed Plaintiff's headaches and related treatment notes in great detail in the decision[] and complied with the general requirements in [SSR] 19-4p in doing so." (ECF No. 19 at 10-11.) The Court agrees the ALJ's analysis of Plaintiff's symptoms was complete—including his analysis of Plaintiff's headaches—and finds no error.

Generally, when evaluating a claimant's symptoms and subjective complaints, the ALJ uses a two-step process.[7] *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529, 416.929 (regulations governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other

---

[7] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). But, the term "credibility" is no longer used. SSR 16-3p, at *2.

measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).[8]

In 2019, the Social Security Administration provided further guidance regarding evaluation of headache symptoms, setting forth "how [to] establish that a person has a medically determinable impairment of a primary headache disorder" and how to evaluate that disorder. SSR 19-4p, at *1. Primary headache disorders, which include migraines, tension-type headaches, and cluster headaches, are "not caused by another medical condition." *Id.* at *2-3. Rather, as SSR 19-4p notes, the medical community diagnoses a primary headache "only after excluding alternative medical and psychiatric causes . . . ."

---

[8] That is not to say that the ALJ may simply make "a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

11

*Id.* at *4.[9] If the ALJ can rule out other causes, and if the criteria for one of the four primary headache types are met, a primary headache may be established as a medically determinable impairment at step two.[10] *Id.* at *4-7. Once headaches have been established as a medically determinable impairment, the ALJ will then go through the typical analyses under steps three, four, and five. *Id.* at *7-8 (considering, in the RFC analysis, the "limiting effects" of plaintiff's impairments and "the extent to which the person's impairment-related symptoms are consistent [and supportable] with the evidence in the record.").

Here, the ALJ's opinion adequately accounted for Plaintiff's migraine headaches. The ALJ determined, first, after finding Plaintiff's migraines severe at step two (R. 23, 26) that Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms . . . ." (R. 26-27 (relying on Plaintiff's testimony at the May 2020 hearing and statements Plaintiff made to his medical providers).) Next, the ALJ considered whether Plaintiff's subjective statements regarding his impairments—including his headaches—when evaluated alongside all other objective evidence, led to the conclusion that Plaintiff was disabled. Though he ultimately found that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 27), he sufficiently considered Plaintiff's subjective complaints. In accordance with

---

[9] Listing unremarkable MRIs, CTs, CTAs, blood chemistries, uranalysis, x-rays, and EEGs as examples of tests that might rule out other causes.

[10] Considerations governing whether a plaintiff suffers from a primary headache disorder include: (1) observations of a typical headache event and a detailed description of the event including all associated phenomena by an accepted medical source; (2) remarkable or unremarkable findings on laboratory tests; or (3) response to treatment, as "successful treatment of the underlying condition will alleviate the secondary headaches." *Id*. at *5.

12

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and SSR 16-3p, the ALJ weighed factors such as Plaintiff's daily activities (R. 26-27, 29);[11] the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 26-30);[12] the type, dosage, and effectiveness of the medication Plaintiff took to alleviate his symptoms (R. 28-30);[13] the other treatment he received for symptom relief (R. 28);[14] and other measures he used to relieve his symptoms (R. 26-27).[15]

Only in light of this analysis did the ALJ hold that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his headaches were not wholly consistent with the record. Contrary to Plaintiff's contention, this was an adequate evaluation under 20 C.F.R. §§ 404.1529, 416.929, and SSR 19-4p. After determining Plaintiff's headaches were a severe impairment at step two, the ALJ thoroughly reviewed Plaintiff's migraines

---

[11] Noting that though Plaintiff testified his daily migraines required he stay in bed all day, he got up to shower, use the restroom, and do other tasks, such as take his children to school, go to the store, and attend medical appointments. (R. 26-27.) Also noting that, upon examination with Dr. Vaught, Plaintiff's daily activities were reportedly affected by a lack of motivation, resulting in him only bathing a few times a week and driving on a limited basis. (R. 29.)

[12] Noting that Plaintiff reported his daily migraines were triggered by light and movement and were so severe they required him to stay in bed all day, every day. (R. 26.) Noting these reports were not entirely consistent with Plaintiff's daily activities (R. 27) and that, while Plaintiff continued to report consistent, debilitating migraines which his doctors described as "sub-optimally controlled," the intensity of these headaches was somewhat curbed by medication, which precipitated "meaningful migraine improvement." (R. 28-30.) Lastly, noting that upon presentation for migraines, Plaintiff's examinations were within normal limits "despite the severity of the claimant's subjective complaints." (*Id.*)

[13] Noting that Plaintiff was on multiple medications to treat his migraine headaches—such as Aimovig and Emgality injections (R. 28-30) and other medication for breakthrough migraines (R. 29-30)—and that these medications were partially effective (R. 28-30).

[14] Noting that though Tulsa Neurospecialists recommended psychotherapy, there was no evidence in the record showing Plaintiff followed up on this recommendation. (R. 28.)

[15] Noting Plaintiff's testimony at hearing that he stayed in a quiet, dark room with the door shut to alleviate his migraine headaches. (R. 26.)

as a part of his RFC symptom analysis. Nothing more was required.[16] Though a court may have come to a different determination, *White*, 287 F.3d at 908, it is not the court's job to reweigh evidence adequately considered by the ALJ, *Bowman*, 511 F.3d at 1272. As the ALJ sufficiently included Plaintiff's headaches in his analysis beyond step two, this is essentially what Plaintiff requests the Court do—reweigh the evidence. The undersigned declines to do so. The ALJ conducted an appropriate sequential analysis, and his evaluation was supported by substantial evidence and followed the requisite legal standards. The Court, therefore, affirms the ALJ's decision.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 22nd day of March, 2022.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[16] The Court notes that the mere presence of a severe impairment does not always result in an RFC limitation. *See, e.g.*, *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (unpublished) (holding that, regarding certain severe impairments, "the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (alterations and internal quotations marks omitted)).